IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| REESE BRANTMEIER and MAYA JOINT, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:24-CV-238 |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, Chief District Judge.

Plaintiffs Reese Brantmeier and Maya Joint want to compete in Division I college tennis and also to accept all the prize money they win by competing in non-collegiate tennis tournaments. The defendant National Collegiate Athletic Association and its member institutions impose rules that severely limit the amount of prize money current and prospective Division I tennis athletes can accept without losing their Division I eligibility. The plaintiffs say that those rules violate Section 1 of the Sherman Act, and they seek injunctive relief and damages on behalf of themselves and others similarly situated. Because the plaintiffs have satisfied the Rule 23 requirements for each class, the Court will certify the classes.

## I.    The NCAA Prize Money Rules for Tennis Players

The NCAA administers college sports as "a voluntary, self-governing association composed of member colleges and universities and athletic conferences across the

country." Doc. 69-2 at ¶ 5. It has nearly 1,100 member schools split between Divisions I, II, and III. *Id.* at ¶ 6. Each NCAA division has its own rules governing college eligibility, and the member schools agree to comply with the rules of their respective divisions. *Id.* at ¶¶ 5–6. NCAA rules allow Division I tennis players to compete in third-party competitions, but the rules severely limit the amount of prize money the athletes can accept for their performance in those competitions without losing their college eligibility. *Id.* at ¶¶ 21–25.

Before starting college, prospective Division I tennis players may accept up to $10,000 in prize money per year plus additional prize money that covers their actual and necessary expenses for the particular tournament in which they won that prize money. *Id.* at ¶ 23. Before an athlete can compete in Division I tennis and before starting college, each athlete must satisfy the NCAA that they are eligible by submitting information to the NCAA Eligibility Center. *Id.* at ¶¶ 10–12. As part of this process, the athletes must disclose any prize money they have accepted. *Id.* at ¶¶ 12, 26.

Current Division I athletes may not accept any prize money beyond the amount of their annual actual and necessary expenses for participating in third-party competitions. *Id.* at ¶¶ 24–25. Upon a student's enrollment, the student's member school ensures compliance with the eligibility requirements. *Id.* at ¶¶ 19, 25, 32.

## II.    The Plaintiffs

Ms. Brantmeier is a student at the University of North Carolina at Chapel Hill and a member of the UNC women's tennis team, a Division I NCAA program. Doc. 69-5 at 8, 21, 40, 69. Before college, she competed in a number of tennis tournaments, including

2

junior tournaments at the U.S. Open and Wimbledon. *See id.* at 16–17. Through her success at the U.S. Open, she earned nearly $50,000 in prize money. Doc. 22-1 at ¶¶ 13-14. But because of the NCAA Prize Money Rules, she forfeited most of that money so she would be eligible to compete in Division I tennis. *Id.* at ¶ 18. Now, because of the Prize Money Rules, she cannot accept any prize money beyond what is necessary to cover her annual tournament expenses without losing her Division I eligibility. *Id.* at ¶ 32; Doc. 69-3 at 78.

Ms. Joint also competed in a number of third-party tournaments, Doc. 22-3 at ¶ 9; Doc. 69-4 at 53–54, before joining the women's tennis team at the University of Texas at Austin, another NCAA Division I program. *See* Doc. 22-3 at ¶ 5; Doc. 68-2 at ¶ 3; Doc. 69-4 at 22, 25. Like Ms. Brantmeier, Ms. Joint earned tens of thousands of dollars in prize money before starting college but had to forfeit most of it to ensure her Division I eligibility. Doc. 22-3 at ¶¶ 12, 15–16; Doc. 69-4 at 52–71. After enrolling in college, Ms. Joint competed in both NCAA and professional prize money tournaments, with great success. Doc. 69-4 at 41, 81–83. She left the University of Texas after her first semester to pursue a professional tennis career. Doc. 68-2 at ¶¶ 3–6; *see* Doc. 69-4 at 48. Since she has accepted more prize money than the rules allow, *see* Doc. 68-2 at ¶ 7, she is no longer eligible to compete in NCAA Division I tennis, Doc. 69-3 at 78, despite her interest in doing so. Doc. 68-2 at ¶ 8.

## III. The Plaintiffs' Claims and Requested Classes

In early 2024, Ms. Brantmeier filed this putative class action; she asserted that the Prize Money Rules violate § 1 of the Sherman Act for all Division I individual sports, and

3

she sought injunctive relief.  Doc. 1.  She later amended her complaint, adding Ms. Joint as a named plaintiff and limiting their claims to Division I tennis.  Doc. 58.

In the operative complaint, the plaintiffs assert two claims under § 1 of the Sherman Act:  price-fixing and group boycott.  *Id.* at ¶¶ 173–199.  Both claims are based on the NCAA Prize Money Rules, which the plaintiffs say are an unreasonable restraint on trade that harms competition in the nationwide market for the labor of NCAA Division I student-athletes and prospective student-athletes competing in men's and women's tennis.  *Id.* at ¶¶ 133, 169–72, 179, 193.

The plaintiffs now move to certify two classes pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Doc. 67.  They propose an injunctive class under Rule 23(b)(2) with the following class definition:

> [A]ll persons who at any time between March 19, 2020 and the date of judgment in this action, (i) competed in NCAA Division 1 Tennis, or (ii) were ineligible to compete in NCAA Division I Tennis due to the Prize Money Rules.

*Id.* at 1.  They also propose a damages class under Rule 23(b)(3), defined as:

> [A]ll persons who at any time between March 19, 2020 and the date of judgment in this matter, have voluntarily forfeited Prize Money earned in a tennis tournament, and (i) have competed in NCAA Division 1 Tennis or (ii) have submitted information to the NCAA Eligibility Center.

*Id.*

The NCAA opposes certification of both classes.  Doc. 69.  Each party filed briefs with evidentiary support, Docs. 68, 69, 71, 78, 80, including testimony by persons they put forth as expert witnesses.  *See, e.g.*, Docs. 68-1, 69-1.  Each party filed motions to

4

exclude the other's expert reports, and briefing has been completed. Docs. 82 to 85, 87, 89, 91 to 93. The Court held a hearing on July 7, 2025. Minute Entry 07/07/2025.

## IV. Class Certification

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (cleaned up). To qualify for the exception, the plaintiffs "must affirmatively demonstrate their compliance" with Federal Rule of Civil Procedure 23. *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521 (4th Cir. 2022) (cleaned up). District courts must rigorously assess the proffered evidence, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), but they have "wide discretion" in evaluating whether the Rule 23 requirements have been met, in light of their experience and expertise in managing complex litigation. *Ward v. Dixie Nat'l Life Ins. Co.*, 595 F.3d 164, 179 (4th Cir. 2010); *Carolina Youth Action Project v. Wilson*, 60 F.4th 770, 780 (4th Cir. 2023); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979) (noting that district courts "have broad power and discretion vested in them" as to the "certification and management of potentially cumbersome" class actions).

There are a number of requirements a plaintiff must meet to obtain class certification. As a threshold requirement, the class representative must be a member of the class she seeks to represent. The plaintiff must also meet the requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. Finally, the plaintiff must meet one set of requirements under Rule 23(b). Here, the plaintiffs proceed under Rule 23(b)(2) for the putative injunctive class, so they must show that the NCAA

5

has acted on grounds generally applicable to the class that make injunctive or declaratory relief appropriate for the class as a whole. For the putative damages class, the plaintiffs proceed under Rule 23(b)(3), so they must show that the class members are readily identifiable, and they must meet the predominance and superiority requirements.

## V.    The Proposed Injunctive Class

### A.  Threshold Requirements

As a threshold matter, Rule 23 requires that the proposed class representatives be members of the proposed class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997); *see also* Fed. R. Civ. P. 23(a). As noted *supra*, the proposed injunctive class consists of:

> [A]ll persons who at any time between March 19, 2020 and the date of judgment in this action, (i) competed in NCAA Division 1 Tennis, or (ii) were ineligible to compete in NCAA Division I Tennis due to the Prize Money Rules.

Doc. 67 at 1.

Ms. Brantmeier and Ms. Joint both competed in Division I tennis during the relevant time, Doc. 22-1 at ¶ 29; Doc. 69-5 at 8, 21; Doc. 22-3 at ¶ 5; Doc. 68-2 at ¶¶ 3–4, and Ms. Joint is now ineligible to compete because of the Prize Money Rules. Doc. 69-3 at 78. They are thus both members of the proposed class, and the NCAA does not contend otherwise. For the injunctive class, the plaintiffs do not need to demonstrate that other class members are readily identifiable, as is required for classes under Rule 23(b)(1) and Rule 23(b)(3). *See Kadel v. Folwell*, 100 F.4th 122, 160–61 (4th Cir. 2024) (collecting cases), *vacated on other grounds*, 2025 WL 1787687 (U.S. June 30, 2025).

6

## B.  Rule 23(a) Requirements

Plaintiffs seeking class certification must meet the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Peters v. Aetna Inc.*, 2 F.4th 199, 241 (4th Cir. 2021); Fed. R. Civ. P. 23(a). "These four requirements effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 654 (4th Cir. 2019) (cleaned up). The plaintiffs have satisfied these requirements for the injunctive class.

### 1.  Numerosity

Rule 23(a) requires that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While "no specified number is needed to maintain a class action, . . . a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021) (cleaned up).

The plaintiffs have satisfied the numerosity requirement for the putative injunctive class. Approximately 12,000 students have competed in NCAA Division I Tennis since March 19, 2020. Doc. 69-1 at ¶ 48; Doc. 68-1 at ¶ 10. Joinder of that many plaintiffs would be impracticable.[1]

---

[1] The class contains both those who played Division I college tennis as well as those who never played Division I tennis and are ineligible to do so because of the Prize Money Rules. For the latter putative class members, the NCAA makes a perfunctory argument in a footnote that the plaintiffs have not provided enough information about the athletes who are ineligible to compete at the Division I level because of the Prize Money Rules. Doc. 69 at 25 n.4. But the NCAA has not explained why this is necessary, particularly since there is no indication of conflicts between these groups that would require treatment as distinct subclasses. *See Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 449–450 (4th Cir. 2003) (noting that subclasses must each satisfy the Rule 23(a) requirements).

7

## 2. Commonality, Typicality, and Adequate Representation

The requirements of commonality, typicality, and adequacy of representation have significant overlap. *See Dieter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006); *Wal-Mart*, 564 U.S. at 349 n.5. To satisfy the commonality requirement, "even a single common question will do," *Wal-Mart*, 564 U.S. at 359 (cleaned up), "but it must be of such a nature that its determination will resolve an issue that is central to the validity of each one of the claims in one stroke." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 360 (4th Cir. 2014) (cleaned up); *accord Carolina Youth*, 60 F.4th at 780.

"The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members." *Tatum v. R.J. Reynolds Tobacco Co.*, 254 F.R.D. 59, 65 (M.D.N.C. 2008) (cleaned up). While the interests of the named plaintiffs in prosecuting their case "must simultaneously tend to advance the interests of the absent class members," claims of the class representative and claims of the class need not "be perfectly identical or perfectly aligned." *Dieter*, 436 F.3d at 466–67. In antitrust cases, typicality will generally "be established by plaintiffs and all class members alleging the same antitrust violation by defendants." *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 539 (N.D. Cal. 2015).

The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625; *accord Carolina Youth*, 60 F.4th at 780. It also serves to assess "competency and conflicts of class counsel." *Amchem*, 521 U.S. at 626 n.20; *accord Wal-Mart*, 564 U.S. at 349 n.5.

8

The plaintiffs have satisfied the commonality requirement for the putative injunctive class.  The key question is whether the Prize Money Rules violate the Sherman Act.  This question "naturally lends itself to common proof, because that determination turns on defendants' conduct and intent along with the effect on the market, not on individual class members."  *In re College Athlete NIL Litig.*, No. 20-CV-3919, 2023 WL 8372787, at *8 (N.D. Cal. Nov. 3, 2023) (cleaned up).  To answer that overarching question, the plaintiffs will need to address whether the NCAA has monopsony power, whether relevant markets exist and what they are, whether the Prize Money Rules are restrictions on trade, and whether the rules harm competition.  *See NCAA v. Alston*, 594 U.S. 69, 81–82 (2021).  The plaintiffs have forecast common evidence to support their § 1 claim, Doc. 68-1 at ¶¶ 11–55, and the NCAA makes only perfunctory and undeveloped arguments that this is not a common issue.  *See* Doc. 69 at 24–28.

The plaintiffs' claims are typical of those of the members of the putative injunctive class.  Since Ms. Brantmeier is a tennis athlete at UNC, she is limited in her ability to accept prize money, *see* Doc. 22-1 at ¶¶ 32–33, and her claims are typical of the class members who have played Division I Tennis during the relevant time.  Ms. Joint played Division I tennis during the relevant time, and her claims are typical of those persons who are now ineligible to compete in Division I tennis because of the Prize Money Rules.  *See* Doc. 68-2 at ¶¶ 3–4.  All putative class members are subject to those same rules, so they are all unable to accept prize money above what the rules allow if they want to play Division I tennis.  There is no evidence that the Prize Money Rules apply differently to

9

anyone in the putative class or that any putative class member is exempt from the rules. Thus, the plaintiffs' claims are typical of those of the absent injunctive class members.

Lastly, the plaintiffs have satisfied the adequacy requirement. Ms. Brantmeier and Ms. Joint have been active participants in this litigation. Each has assisted counsel in the litigation, provided declarations, and participated in depositions. Doc. 22-1 at ¶ 42; Doc. 68-2 at ¶ 10; *see* Docs. 69-4, 69-5. They are motivated to pursue the case because each is directly affected by the Prize Money Rules. *See* Doc. 22-1 at ¶ 18; Doc. 68-2 at ¶¶ 3–4.

Plaintiffs' Counsel will adequately represent the class. The Court has independently reviewed the qualifications, experience, knowledge of the law, and resources of Plaintiffs' Counsel. They have extensive experience in complex antitrust litigation and class actions. *See* Doc. 68-3. Plaintiffs' Counsel's qualifications will be discussed in more detail *infra* at 28–29 when addressing appointment of class counsel.

The NCAA contends that the plaintiffs have not shown commonality, typicality, or adequacy because Ms. Brantmeier and Ms. Joint have different interests and injuries than most Division I tennis players, who the NCAA says have little to no chance of earning prize money. Doc. 69 at 24–27. That argument is unpersuasive.

In antitrust suits for injunctive relief, the plaintiffs' injury need only be threatened. *Dickson v. Microsoft Corp.*, 309 F.3d 193, 203 (4th Cir. 2002); Areeda & Hovenkamp, *Fundamentals of Antitrust Law* § 3.01[B] (4th ed. 2011). And "[c]ertification of a class under Rule 23(b)(2) is appropriate even if not all class members may have suffered the injury presented in the class complaint so long as the challenged policy or practice was generally applicable to those in the class as a whole." *Fraser v. Bureau of Alcohol*, No.

10

22-CV-410, 2023 WL 5616011, at *4 (E.D. Va. Aug. 30, 2023) (citing 2 Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:28 (6th ed. 2022)); *see also* Fed. R. Civ. P. 23(b)(2) advisory committee's note to 1966 amendment ("Action or inaction is directed to a class within the meaning of this subdivision even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."). Not all class members must "be aggrieved by or desire to challenge defendant's conduct in order for some of them to seek relief under Rule 23(b)(2)." 7AA *Wright & Miller's Federal Practice & Procedure* § 1775 (3d ed. 2005); *see also Parsons v. Ryan*, 289 F.R.D. 513, 524 (D. Ariz. 2013).

For example, in *Carolina Youth*, the Fourth Circuit found no error in a district court's decision to certify a Rule 23(b)(2) class of all South Carolina elementary and secondary school students despite the fact that "the vast majority of class members" had not been criminally charged under the challenged statutes. 60 F.4th at 777, 780. The court noted that the students' "past charges do not bear on their typical experiences as students threatened by future prosecution." *Id.* at 780.

Ms. Brantmeier and Ms. Joint are typical in all the ways that matter: all members of the putative injunctive class are or have been limited in their ability to accept prize money by the Prize Money Rules without losing their eligibility. Ms. Brantmeier and Ms. Joint may earn or have the potential to earn large sums of money in big-time tournaments, but less elite athletes cannot even take $100 over expenses for winning a competition run by a local tennis club without threatening their eligibility. These rules apply consistently across the putative injunctive class, and the plaintiffs' interest is in

11

determining whether the rules are unlawful. *See Howell v. Advantage RN, LLC*, No. 17-CV-883, 2018 WL 3437123, at *7 (S.D. Cal. July 17, 2018) ("[The named plaintiff's] interest is in determining whether Defendant is employing an unlawful policy. . . . [She] is therefore an adequate representative."). The large financial injury to the named plaintiffs "enhance[s] their incentive to vigorously prosecute the class's shared claim" that the rules violate the Sherman Act. *Carolina Youth*, 60 F.4th at 780.

The NCAA also contends that if the plaintiffs get their requested injunctive relief, some class members might be worse off, as their spots on college tennis teams could be taken by more elite tennis players who also earn money on the pro circuit. Doc. 69 at 26. The defendant's argument that "even if the restraints are illegal, some class members would nonetheless prefer for the restraints to exist" is not persuasive. *Laumann v. Nat'l Hockey League*, 105 F. Supp. 3d 384, 404 (S.D.N.Y. 2015). "[I]t confuses the question of whether a common injury unites the class with the distinct question of whether all class members agree about how best to *respond* to the injury." *Id.* at 400. And "whether everyone in the class is interested in challenging the policy at issue is largely irrelevant." *J.D. v. Azar*, 925 F.3d 1291, 1316 (D.C. Cir. 2019) (cleaned up) (quoting 2 William B. Rubenstein, *Newberg and Rubenstein on Class Actions* § 4:28 (5th ed. 2018)).

In any event, while it is possible that enjoining the Prize Money Rules will cause some athletes to face increased competition for their Division I roster spots, as the defendant's expert suggests, Doc. 69-1 at ¶¶ 95–98, it is also possible that some athletes will relish the higher level of competition, that member schools will increase roster spots, or that the NCAA will make other adjustments in light of changed circumstances. *See*

Doc. 78-2 at ¶¶ 102–110.  Regardless, the fact that some college tennis players might not like the change is hardly enough to show a conflict of interest.  *See Laumann*, 105 F. Supp. 3d at 404; *In re NCAA*, 311 F.R.D. at 542 ("[A]lthough Defendants suggest that class members might prefer to leave an unlawful restraint in place because they otherwise would have to compete against one another, such preference for non-competition does not justify denying injunctive relief class certification.").  And any procompetitive benefits of the Prize Money Rules will be evaluated on the merits if the per se rule does not apply. *See Laumann*, 105 F. Supp. 3d at 403; *Alston*, 594 U.S. at 87; *see also Ohio v. Am. Express Co.*, 585 U.S. 529, 540–40 (2018) (discussing the per se rule).

As the court in *Laumann* pointed out, this type of argument, if adopted, "threatens the integrity of the antitrust laws."  105 F. Supp. 3d at 400.  "If the fact that illegal restraints operate to the economic advantage of certain class members were enough to defeat certification, the efficacy of classwide antitrust suits—and the deterrence function they serve—would wither."  *Id.*

The plaintiffs have satisfied the Rule 23(a) requirements for the proposed injunctive class.

### C. Rule 23(b)(2) Requirement

A plaintiff pursuing a class action must establish that the case fits into at least one of the three subsections of Rule 23(b).  *Comcast*, 569 U.S. at 33.  For the injunctive class, the plaintiffs rely on Rule 23(b)(2), Doc. 67 at 1, which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

13

class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360.

The plaintiffs have satisfied the Rule 23(b)(2) requirement. The Prize Money Rules apply to every member of the putative class uniformly; all current and prospective Division I tennis athletes are limited in their abilities to accept prize money by the same rules. The declaratory and injunctive relief the plaintiffs seek, Doc. 58 at 62–63, will provide relief to each member of the class; as every single class member will be able to earn prize money in a tennis tournament, large or small, without losing eligibility. If the plaintiffs prove their antitrust claims, a universal injunction would be an appropriate remedy to prevent future anticompetitive acts against all members of the class.

The NCAA contends that the purported intra-class conflicts discussed above prevent the plaintiffs from satisfying the Rule 23(b)(2) requirement. Doc. 69 at 27–28. But as already explained, that argument is unpersuasive. *See In re NCAA*, 311 F.R.D. at 546 (holding that the class satisfied the Rule 23(b)(2) requirement because an NCAA policy applied generally to the class and the plaintiffs sought an injunction that would apply to all class members).

## VI. The Proposed Damages Class

### A. Threshold Requirements

The proposed class representatives must be members of the proposed class. *Amchem*, 521 U.S. at 625–26; *see also* Fed. R. Civ. P. 23(a). As noted *supra*, the proposed damages class consists of:

14

> [A]ll persons who at any time between March 19, 2020 and the date
> of judgment in this matter, have voluntarily forfeited Prize Money
> earned in a tennis tournament, and (i) have competed in NCAA
> Division 1 Tennis or (ii) have submitted information to the NCAA
> Eligibility Center.

Doc. 67 at 1.

During the relevant time, Ms. Brantmeier and Ms. Joint voluntarily forfeited prize money from tennis tournaments, competed in NCAA Division I tennis, and submitted information to the NCAA Eligibility Center. *See* Doc. 22-1 at ¶¶ 19, 29, 32; Doc. 22-3 at ¶¶ 5, 16; Doc. 69-5 at 8, 21; Doc. 69-3 at 78. Both Ms. Brantmeier and Ms. Joint are members of the putative damages class, and the NCAA does not contend otherwise.

Plaintiffs pursuing class certification under Rule 23(b)(3) must also demonstrate that members of the class are readily identifiable or ascertainable. *Peters*, 2 F.4th at 241–42. To be readily identifiable, plaintiffs need not be able to "identify every class member at the time of certification." *Krakauer*, 925 F.3d at 658 (quoting *EQT*, 764 F.3d at 358). Rather, a class need only be defined "in such a way as to ensure that there will be some administratively feasible way for the court to determine whether a particular individual is a member at some point." *Id.* (cleaned up).

The members of the putative damages class are ascertainable. They can be identified based on the "objective criteria," *EQT*, 764 F.3d at 358, of whether they forfeited prize money, whether they competed in NCAA Division I tennis, and whether they submitted information to the NCAA Eligibility Center. *See* Doc. 67 at 1. The NCAA maintains records of athletes who compete in Division I tennis and who submit information to the Eligibility Center, Doc. 69-2 at ¶ 14; Doc. 78-3 at 4–7, so those

15

qualifications for class membership can be readily determined through common records the NCAA itself maintains. And it is highly likely that any athlete who "voluntarily forfeited Prize Money earned in a tennis tournament" will have some record of that forfeiture, since they otherwise might be at risk of losing their eligibility. And, of course, the Division I schools who track eligibility will, or should, have that information as well.

In a footnote, the NCAA contends that members of the damages class are not ascertainable. They contest the method proposed by the plaintiffs' expert to identify athletes that forfeited prize money as unreliable and contend it will require many individual inquiries. Doc. 69 at 21 n.3.

First, the method at issue involves identifying class members from the NCAA's own records and from other business records. It is hard to understand why that "method" is unreliable.

Second, every class action requires some degree of individual identification of class members; that process will be simpler in this case than in many others the Court has managed without incident or undue complications. It is "administratively feasible," as the Fourth Circuit has said. *Krakauer*, 925 F.3d at 658. The fact that minimal and feasible individual inquiries may be needed does not undermine ascertainability. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 144 (D. Md. 2022) ("[T]he need to review individual files to identify [class] members [is] not [a] reason[] to deny class certification." (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 171 (3d Cir. 2015)).

The plaintiffs have satisfied the threshold requirements.

16

## B. Rule 23(a) Requirements

### 1. Numerosity

The plaintiffs have provided evidence that there are over 60 members of the putative damages class. Doc. 78-2 at ¶ 144. Joinder of that many parties would be impracticable, raising the specter of several dozen individuals who may well have different theories of proving antitrust impact. Some class members would also be economically unmotivated to litigate their claims, as many of them forfeited smaller amounts of prize money. Doc. 69-1 at ¶ 52. And judicial economy favors a class action over joinder. *See In re Zetia*, 7 F.4th at 235.

The NCAA contends that there may be as few as 21 athletes in the class. Doc. 69 at 25 n.4. But using the standards the NCAA would apply, there would be at least 38 members of the putative damages class, not 21. Doc. 78-2 at ¶ 146. Regardless, there is no magic number that satisfies the numerosity requirement. *In re Zetia*, 7 F.4th at 234. Upon "examination of the specific facts" of this case, *Gen. Tel. Co. of the Nw., Inc. v. EEOC*, 446 U.S. 318, 330 (1980), several dozen class members all over the country makes joinder impracticable.[2] And as other tennis players forfeit prize money while this litigation moves forward, the number of class members will likely increase.

The plaintiffs have satisfied the numerosity requirement.

---

[2] At oral argument, counsel for the NCAA suggested that geographic concerns were unimportant given technological improvements like videoconferencing. That may be so for discovery, but plaintiffs still must attend mediated settlement conferences in this district, *see* LR 16.4, 83.9b, 83.9e, and must be present for the trial.

## 2. Commonality, Typicality, and Adequacy of Representation

The analyses of the commonality, typicality, and adequacy requirements for the putative damages class are largely identical to those for the putative injunctive class. *See* discussion *supra* at 8–10. The putative damages class features the same common questions of liability as the putative injunctive class. The key question of whether the Prize Money Rules violate the Sherman Act can be answered with common evidence.[3]

As to the typicality requirement, all of the damages class members allege the same antitrust injury: they had to forfeit prize money because of the Prize Money Rules. Doc. 67 at 1; Doc. 68-1 at ¶ 48. Ms. Brantmeier and Ms. Joint each base their claims on their forfeiture of prize money because of the Rules. Doc. 68-1 at ¶ 48; *see Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) ("Typicality requires that the . . . class representative . . . be part of the class and possess the same interest and suffer the same injury as the class members." (cleaned up)). The plaintiffs' claims are typical of those of the class, and the plaintiffs and their lawyers are adequate to represent the putative damages class. *See* discussion *supra* at 8–10.

The NCAA suggests that Ms. Brantmeier and Ms. Joint cannot meet these requirements because they forfeited more prize money than most of the other members of the putative damages class, so their claims are dissimilar. Doc. 69 at 27. But typicality

---

[3] "In a class action brought under Rule 23(b)(3), the commonality requirement of Rule 23(a)(2) is subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001) (cleaned up); *see also Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006). The common questions will be discussed in more detail *infra* in connection with the predominance requirement for the damages class.

does not require that each and every class member has exactly the same experience. As noted *supra*, the claims of the class need not "be perfectly identical or perfectly aligned." *Deiter*, 436 F.3d at 467. In antitrust cases, typicality will generally "be established by plaintiffs and all class members alleging the same antitrust violation by defendants." *In re NCAA*, 311 F.R.D. at 539.

In any event, it does not make sense that someone who forfeited more prize money will be an inadequate class representative. This is not a case where there is a limited pie that must be divided up between class members. And a large financial interest in the case will likely encourage the named plaintiffs "to prosecute or defend the action vigorously." *See* 7A *Wright & Miller, Federal Practice & Procedure* § 1767; *see also Carolina Youth*, 60 F.4th at 780 (finding no authority or rationale "for decertifying a class because its representatives are *more* highly motivated than unnamed class members to advance their shared interests."); *Anderson Living Tr. v. ConocoPhillips Co.*, 349 F.R.D. 365, 463 (D.N.M. 2025) (holding that the large interest of a representative relative to class members increases their adequacy as representatives); *Molina v. Pacer Cartage, Inc.*, 47 F. Supp. 3d 1061, 1065 (S.D. Cal. 2014) ("[W]hen, as here, class members may have claims of various sizes, the person selected to be class representative is commonly . . . someone with a relatively large claim.").

## C. Rule 23(b)(3) Requirements

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "An individual question is one where members of a proposed class will need to present evidence that varies from

member to member, while a common question is one . . . [that] is susceptible to generalized, class-wide proof." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (cleaned up). "[C]ommon issues of liability may still predominate even when some individualized inquiry is required." *Ealy v. Pinkerton Gov't Servs., Inc.*, 514 F. App'x 299, 305 (4th Cir. 2013); *see also Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 399 (M.D.N.C. 2015) ("Predominance . . . does not require all issues to be common." (cleaned up)); *Gunnells*, 348 F.3d at 429 ("[T]he need for individualized proof of damages alone will *not* defeat class certification."). "Predominance . . . applies to damages because the efficiencies of the class action mechanism would be negated if questions of individual damage calculations overwhelm questions common to the class," but "[t]his does not mean . . . that damages must be susceptible of measurement across the entire class for purposes of Rule 23(b)(3)." *In re Zetia*, 7 F.4th at 237 (cleaned up) (quoting *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 260 (3d Cir. 2016)).

The superiority requirement looks at whether the class action "would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615 (cleaned up). Superiority reflects the policy at the core of class actions, which were designed to overcome the problem that "small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 513 (2017). Class actions address "this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem*, 521 U.S. at 617 (cleaned up).

20

Rule 23(b)(3) provides a non-exclusive list of factors for courts to consider in deciding whether a class action meets the predominance and superiority requirements:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3); *accord Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

### 1. Predominance

Courts look to the elements of the cause of action to decide if common questions of law and fact predominate. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). To establish a private antitrust claim, a plaintiff must prove three elements: (1) a violation of the antitrust laws—here, § 1 of the Sherman Act; (2) individual injury, or impact, resulting from that violation; and (3) damages sustained by the plaintiff. *See Deiter*, 436 F.3d at 467; *In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328, 344–45 (D. Md. 2012); *Williams v. Estates LLC*, No. 19-CV-1076, 2021 WL 1581239, at *3 (M.D.N.C. Apr. 22, 2021).

The first element requires little discussion. Whether the NCAA engaged in an illegal price-fixing or group boycott scheme "can be resolved for each class member in a single hearing" and does not "turn[] on a consideration of the individual circumstances of each class member." *Thorn*, 445 F.3d at 319 (cleaned up). As noted *supra* at 9, the

21

plaintiffs have proffered a plan to prove this element by evidence that is common to all class members and will not require individualized evidence.

The second element is whether the class members suffered an antitrust injury. An antitrust injury is an "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990). Every member of the putative damages class forfeited prize money. Doc. 67 at 1. Whether that qualifies as an antitrust injury can be determined on a class-wide basis. *See In re Titanium Dioxide*, 284 F.R.D. at 344 n.13 ("[T]he legal question of injury is common to the class.").

The NCAA challenges the method proposed by the plaintiffs' expert to prove antitrust injury. Doc. 69 at 12–17, 20–23; Doc. 85 at 6–14. Those arguments, which have to do with determining how much a class member is financially harmed, if at all, go more to calculating damages than they do to antitrust injury, at least when considered next to the way the plaintiffs propose to prove antitrust injury; these arguments are discussed *infra* at 24–25 in connection with the damages element. The method the plaintiffs propose is not particularly complicated; it involves determining the amount of forfeited prize money through simple math.

Similarly, the NCAA challenges the plaintiffs' ability to show that each class member has standing at trial without extensive individual inquiries. Doc. 69 at 19. As the NCAA says, each class member must establish Article III standing at trial in order for this Court to have jurisdiction. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021); *Alig v. Rocket Mortg., LLC*, 126 F.4th 965, 974 (4th Cir. 2025). But the loss of

22

earned prize money would seem to easily meet that requirement; because each class member forfeited prize money they would have otherwise kept, each class member has standing.  *See* Doc. 58 at ¶¶ 179, 190; Doc. 68-1 at ¶ 48.[4]

The third element requires the plaintiffs to show that they sustained damages. Although determining the amount of damages for each athlete may well require some individual inquiries, that does not prevent class certification; "in actions for money damages under Rule 23(b)(3), courts usually require individual proof of the amount of damages each [class] member incurred."  *Gunnells*, 348 F.3d at 428 (cleaned up) (quoting 5 *Moore's Federal Practice* § 23.46[2][a] (3d ed. 1997)); *see also Williams*, 2021 WL 1581239, at *3.  Here, the damages calculation is the same simple formula for all class members, *see Ward*, 595 F.3d at 180, and most of that data will come from common sources.  *See* Doc. 68-1 at ¶¶ 62–69.

The NCAA's challenges to the proposed damages "methodology" are unpersuasive.  First, one does not need an expert economist to say that if someone suffers antitrust injury by having to forfeit prize money, the forfeited prize money is an appropriate measure of damages.  Second, the NCAA challenges the way the plaintiffs have estimated damages incurred during college because of the absence of individual data

---

[4] The NCAA says that each class member will also need to prove that the amount they forfeited outweighs the value they received from participating in college athletics in the but-for world where the Prize Money Rules didn't exist.  Doc. 69 at 19.  The NCAA cites not one case in support of this proposition, and such a perfunctory argument does not defeat class certification. Even so, whether or not the amount athletes forfeited must be weighed against the benefit they received is a common question better addressed at the merits.  *See generally In re Zetia*, 7 F.4th at 237 (rejecting a similar standing challenge in the context of the adequacy requirement because the argument is an injury question for the jury).

on expenses, Doc. 69 at 16; Doc. 85 at 10–11, but it is highly likely that records with that information exist and can be used at trial in lieu of the estimate. *See* Doc. 68-1 at ¶ 65 n.37; Doc. 78-2 at ¶ 21. Indeed, the plaintiffs' expert uses the estimate only to demonstrate how his method works and in case no data becomes available during discovery. Doc. 68-1 at ¶ 65.

If and when the plaintiffs want to present this "average" evidence at trial, the matter can be re-evaluated. In at least one case, the Fourth Circuit has approved of the use of class-wide averages to prove antitrust injury, even if some individualized inquiry is required at trial. *In re Zetia*, 7 F.4th at 237–38. Whether the testimony of the plaintiffs' expert is sufficiently reliable can be resolved then. Even if it is excluded, resolving damages for this manageable number of class members does not cause individual issues to predominate.

The defendant's argument that the expert's method is unreliable because he relies on self-reported data, Doc. 69 at 13–16, 20–21; Doc. 85 at 7–9, is also unpersuasive. The NCAA itself relies on that same self-reported data to determine eligibility. *See* Doc. 78-3 at 4–5; *see also In re Marriott*, 341 F.R.D. at 144 ("[C]ourts do not look favorably upon the argument that records a defendant treats as accurate for business purposes are not accurate enough to define a class." (quoting *Souter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 197–98 (E.D. Va. 2015)). And the athletes have every incentive to ensure that those self-reported records are accurate; if they are not, the athletes could be disqualified from college tennis. Doc. 78-2 at ¶ 70.

24

The NCAA also contends that the method used by the plaintiffs' expert does not take into account differences in how the rules affect athletes before and after enrolling in college. Doc. 85 at 10. But it appears he has properly accounted for those differences. Doc. 89-1 at ¶ 13. Any individual inquiries needed to supplement his method will not predominate over the many common issues.

The plaintiffs have satisfied the predominance requirement.

### 2. Superiority

A class action is the superior method to resolve the claims of the putative damages class. Absent a class action, each athlete who forfeited prize money would need to bring an individual case, likely in different courts throughout the country, or each class member would need to be joined in this action. Either option would be onerous, inefficient, and a waste of court resources. Some of the athletes only forfeited small amounts of prize money, *see* Doc. 68-1 at ¶ 62; Doc. 69-1 at ¶ 52, making separate actions inordinately expensive. A class action will allow finality for all members of the damages class. The NCAA also benefits, as it would face the possibility of conflicting verdicts on what is essentially the same issue if this Sherman Act claim were raised in more than one lawsuit.

The NCAA contends that the plaintiffs have not satisfied the superiority requirement, again challenging the evidence from the plaintiffs' expert. Doc. 69 at 23. Quibbles about how to calculate expenses an athlete incurred are minor problems. Even if the expert's estimates are not used, individual determinations for a manageable number of class members will not be complicated, especially compared to the complications inherent in multiple lawsuits in multiple jurisdictions or joinder of dozens of parties.

25

The Court has overseen a number of class actions. As these cases go, this one is pretty simple. It has discrete dispositive common questions and a manageable number of class members, if and when individual questions arise.

The plaintiffs have satisfied the superiority requirement.

**D. Fail-Safe Class**

"A fail-safe class is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Mr. Dee's Inc. v. Inmar, Inc.*, 127 F.4th 925, 930–31 (4th Cir. 2025) (cleaned up) (quoting *Messner v. Northshore Univ. HealthSys.*, 669 F.3d 802, 825 (7th Cir. 2012)). The Fourth Circuit has not expressly recognized an independent prohibition against fail-safe classes, but other courts have, and fail-safe classes are generally disfavored. *Mr. Dee's* at 931 & n.1 (collecting cases).

The NCAA contends that the putative damages class is an impermissible fail-safe class because it conditions class membership on having suffered the alleged antitrust injury, so it "requires 'a merits determination or liability finding against a defendant to establish class membership.'" Doc. 69 at 23 (quoting *Mebane v. GKN Driveline N. Am., Inc.*, No. 18-CV-892, 2022 WL 16961496, at *3 (M.D.N.C. Nov. 16, 2022)).

But the putative damages class is not a fail-safe class. Membership requires the athlete to have forfeited prize money; that is a question of fact, not a legal determination. The plaintiffs will still have to prove that this is an antitrust injury.[5]

---

[5] The defendant's argument about what constitutes a fail-safe class would, if adopted, make it almost impossible to certify a Rule 23(b)(3) class. Under the NCAA's arguments, if the definition is not specific enough, the class would fail on typicality, adequacy, or standing grounds, and if it is specific enough, it would be an impermissible fail-safe class.

## E. Standing

At oral argument, the NCAA asserted that the plaintiffs must establish that each member of the damages class has standing at the class certification stage. While the Supreme Court has not decided when each member of the class must demonstrate standing, *Mr. Dee's*, 127 F.4th at 934, the Fourth Circuit has; it requires only the named plaintiffs to establish standing at the class certification stage. *Carolina Youth*, 60 F.4th at 779. It makes little sense to require a plaintiff to provide evidence that each damages class member has standing before the plaintiff is required to identify every class member.

Even if that were not so, every member of the damages class forfeited prize money because of the Prize Money Rules, and Ms. Brantmeier and Ms. Joint provided evidence that they forfeited prize money. *See, e.g.*, Doc. 68-1 at ¶ 48. This is adequate to show standing at this stage. The case on which the NCAA relies, *Mr. Dee's*, is quite different; there, the evidence suggested that over 30% of the class seeking damages was uninjured. 127 F.4th at 934. Here, there is no such evidence.

The plaintiffs have met the standing requirement at this stage.

## VII. Daubert Motions

The parties spill a lot of ink in an effort to exclude parts of the testimony of the other party's proffered expert witness. The Court has addressed the relevant arguments *supra*. The rest of the arguments largely go to admissibility of those opinions if and when the merits are reached and if and when that evidence is offered. Many of the arguments are directed to evidence that is unimportant to the class certification decision

27

or would not affect the outcome of the class certification decision even if the Court agreed with the motions to exclude.  Further discussion is unnecessary.

## VIII.   Appointment of Class Representatives and Class Counsel

The plaintiffs move to be appointed as class representatives, and they move for appointment of their attorneys as class counsel.  Doc. 67 at 2.  As stated *supra* at 10, the plaintiffs are adequate representatives of the classes.  They will be appointed class representatives of both classes.

Plaintiffs' Counsel, attorneys with Milberg Coleman Bryson Phillips Grossman, PLLC and Miller Monroe Holton & Plyler, PLLC, are adequate representatives of the classes and are capable of proceeding as class counsel.  The NCAA makes no argument to the contrary.  Plaintiffs' Counsel have extensive experience in antitrust and class action litigation, *see* Doc. 68-3, and several among them have served as class counsel in other cases in federal courts.  *See, e.g.*, Doc. 68-3 at 13, 15–16, 26.  The Court will appoint Plaintiffs' Counsel as class counsel for both classes.

## IX.   Conclusion

In its discretion, the Court will certify both classes.  Ms. Brantmeier and Ms. Joint are members of the proposed classes, and they have met the threshold requirements. Both classes are sufficiently numerous, and there are common questions likely to be dispositive.  The plaintiffs' claims are typical of those of the class members, and they and their counsel are adequate representatives.  As to the injunctive class, the NCAA has acted on grounds generally applicable to the class, making injunctive relief appropriate to the class as a whole.  As to the damages class, common questions predominate, and a

class action is the superior method of adjudication. Ms. Brantmeier and Ms. Joint will be appointed as class representatives, and their counsel will be appointed as class counsel.

It is **ORDERED** that:

1.  The plaintiffs' motion to exclude certain opinions of Dr. Matthew Backus, Doc. 82, is **DENIED**.

2.  The defendant's motion to exclude opinions of Andrew Schwarz, Doc. 84, is **DENIED**.

3.  The plaintiffs' motion for class certification, Doc. 67, is **GRANTED**.

4.  The following classes are **CERTIFIED**:

    a.  All persons who, at any time between March 19, 2020, and the date of judgment in this action, (i) competed in NCAA Division I Tennis, or (ii) were ineligible to compete in NCAA Division I Tennis due to the Prize Money Rules.

    b.  All persons who, at any time between March 19, 2020, and the date of judgment in this matter, have voluntarily forfeited Prize Money earned in a tennis tournament, and (i) have competed in NCAA Division I Tennis, or (ii) have submitted information to the NCAA Eligibility Center.

5.  The plaintiffs, Reese Brantmeier and Maya Joint, are **APPOINTED** as class representatives.

6.  Plaintiffs' Counsel, Arthur Stock, Daniel Bryson, Lucy Inman, Peggy Wedgworth, and Milberg Coleman Bryson Phillips Grossman, PLLC and Jason Miller, Robert Rader III, William Plyler, Joel Lulla, and Miller Monroe Holton & Plyler, PLLC are **APPOINTED** as class counsel.

7.  The parties **SHALL** again meet and confer about an appropriate class notice, *see* Text Order 07/15/2025, and about a specific trial date in the summer of 2026 and, should the Court amend the scheduling order, later in 2026.  No later than August 18, 2025, the parties **SHALL** file a Joint Submission on Class Notice and Trial containing their joint proposal or, if they do not agree in full, dueling proposals with short briefs directed to items of disagreement.

This the 28th day of July, 2025.

_____
UNITED STATES DISTRICT JUDGE