# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF NORTH CAROLINA
No. 1:24-CV-00238-CCE-JEP

|  |  |
|---|---|
| REESE BRANTMEIER and MAYA JOINT, on behalf of themselves and all other similarly situated, | |
| *Plaintiffs,* | **PLAINTIFFS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | |
| *Defendant.* | |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................. 5

II. STATEMENT OF FACTS .................................................................. 6

  A. PROCEDURAL HISTORY ............................................................ 6

  B. PROPOSED SETTLEMENT ......................................................... 11

    1. Injunctive Relief ................................................................. 11

    2. Damages Relief ................................................................... 12

    3. Attorneys' Fees and Costs ................................................... 13

    4. Release of Claims ............................................................... 14

    5. Claims Administrator .......................................................... 15

    6. Notice Plan ......................................................................... 15

III. STANDARD OF REVIEW ............................................................... 16

IV. ARGUMENT ..................................................................................... 17

  A. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE PRELIMINARILY APPORVED. ............................ 17

    1. The Settlement Resulted from Arm's Length Negotiations ........... 17

    2. The Settlement Provides Significant Relief for the Classes. .......... 19

    3. The Class Representatives Have Vigorously Represented the Classes and the Service Awards to be Requested Are Reasonable. 26

2

4. Class Counsel Have Vigorously Represented the Classes and the Attorneys' Fees and Costs to be Requested Are Reasonable. ......... 28

5. The Proposed Claims Administrator Is Qualified and Its Estimated Fees Are Reasonable. ........................................................................ 30

6. The Proposed Notice Plan Is Appropriate and Affords Adequate Opportunity for Objections and Opt-Outs ...................................... 30

7. The Court Should Set a Final Fairness Hearing ........................... 32

V. CONCLUSION ...................................................................................... 33

Case 1:24-cv-00238-CCE-JEP    Document 113    Filed 04/28/26    Page 3 of 36

# TABLE OF AUTHORITIES

**CASES**

*1988 Trust for Allen Children v. Banner Life Ins. Co.*
   28 F.4th 513, 527 (4th Cir. 2022) ................................................................ 19

*Berry v. Schulman*
   807 F.3d 600, 613 (4th Cir. 2015) ........................................................ 26, 30

*Cox v. Branch Banking & Trust Co.*
   No. 5:17-cv-1982 2019 WL 164814, at *2 (S.D. W.Va. Jan. 10, 2019)........ 24

*Flinn v. FMC Corp.*
   528 F.2d 1169, 1173 (4th Cir. 1975)..................................................... 21, 24

*Horton v. Merrill Lynch, Pierce, Fenner & Smith*
   855 F.Supp. 825, 827 (E.D.N.C. 1994) ....................................................... 16

*In re Jiffy Lube Sec. Litig.*
   927 F.2d 155, 159 (4th Cir. 1991)......................................................... 17, 19

McDonnell v. Miller Oil Co.
   134 F.3d 638, 641 (4th Cir. 1998).............................................................. 29

*Muhammad v. Nat'l City Mortg., Inc.*
   No. 2:07-cv-423, 2008 WL 5377783 (S.D. W. Va. Dec. 19, 2008) ................. 24

*Rodriguez v. W. Publ'g Corp.*
   563 F.3d 948, 958-59 (9th Cir. 2009)......................................................... 27

*Seaman v. Duke Univ.*
   No. 1:15-CV-462, 2019 WL 4674758 (M.D.N.C. Sept. 25, 2019).................. 21

*United States Football League v. National Football League*
   644 F. Supp. 1040 (S.D.N.Y. 1986)............................................................ 23

**RULES**

Fed. R. Civ. P. 23 .................................................................................*passim*

4

## I. INTRODUCTION

After more than two years of litigation, Plaintiffs Reese Brantmeier and Maya Joint ("Named Plaintiffs" and, together with the members of the Classes, the "Class Plaintiffs") on behalf of themselves and the Classes[1] have reached a proposed settlement with Defendant National Collegiate Athletic Association (the "NCAA") to resolve this matter. The proposed settlement was reached after nearly five months of negotiations following the mediated settlement conference between the parties on October 10, 2025.

The NCAA has agreed to pay a total damages settlement of $2.02 million (the "Settlement Fund"), inclusive of a $10,000 service award to each of the Named Plaintiffs. The NCAA has further agreed to pay $425,000 in reimbursement of costs advanced by Class Counsel on behalf of Class Plaintiffs in pursuit of this matter, excluding settlement notice and administration costs, and $1.875 million in attorneys' fees. Finally, the NCAA has agreed to pay up to $250,000 towards settlement notice and administration costs. The costs reimbursement, attorneys' fees, and settlement notice and administration costs will all be paid separately and will not be deducted from the Settlement Fund. In addition, the NCAA has agreed to alter its current restrictions on

---

[1] The Damages Class and Injunctive Relief Class, defined on pages 8-9 below, are together referred to throughout this Brief as the "Classes".

student-athletes' acceptance of awards, bonuses, and other monetary prizes (collectively, "Prize Money" and "Prize Money Rules") prior to initial, full-time collegiate enrollment. The elimination of such restrictions will apply to student-athletes in *all sports* – not just tennis.

The proposed settlement is an extraordinary outcome for the Classes, and the injunctive relief obtained will positively impact future generations of student-athletes, including many individuals who are not members of the Classes. The proposed settlement is eminently fair, reasonable, and adequate and should be preliminarily approved pursuant to Federal Rule of Civil Procedure 23.

## II.    STATEMENT OF FACTS

### A.    PROCEDURAL HISTORY

Plaintiff Reese Brantmeier filed a Complaint against the NCAA on March 18, 2024, asserting antitrust claims under Section I of the Sherman Act against the NCAA on behalf of herself and other similarly situated student-athletes in numerous individual sports, including tennis. Doc. 1. Plaintiff also filed a Motion for Preliminary Injunction on July 2, 2024, which was fully briefed, argued, and then denied by this Court on October 7, 2024. Doc. 21 and 48. Named Plaintiffs filed the First Amended Complaint against the NCAA on November 8, 2024. Doc. 58. Therein, Named Plaintiffs asserted antitrust

6

claims under Section I of the Sherman Act against the NCAA on behalf of themselves and two proposed classes of similarly situated current and former student-athletes competing in NCAA Division I men's and women's tennis ("Tennis") who have participated or intend to participate in non-NCAA competitions that award prize money based on performance. Doc. 58.

Under its long-standing regulations, the NCAA restricts Tennis student-athletes' ability to accept cash awards, bonuses, and other monetary prizes (collectively, "Prize Money") awarded by third parties for performance in non-NCAA competitions (the "Prize Money Rules")[2], such as the US Open Tennis Championships. Doc. 58. Plaintiffs brought antitrust claims against the NCAA, challenging the Prize Money Rules and their continued enforcement under Section I of the Sherman Act. *Id*. The NCAA answered the First Amended Complaint on December 23, 2024. Doc. 64.

On February 7, 2025, Named Plaintiffs filed their Motion for Class Certification. Doc. 67. Named Plaintiffs sought certification of an injunctive relief class pursuant to Fed. R. Civ. P. 23(b)(2) and a damages class pursuant to Fed. R. Civ. P. 23(b)(3). Doc. 67. The NCAA filed its opposition to the proposed class certification on March 28, 2025. Doc. 69. In addition, on May

---

[2] Specifically, the challenged Prize Money Rules include NCAA Bylaws 12.1.2.4.2, 12.1.2.4.2.1, and 12.1.2.4.2.2.

30, 2025, Named Plaintiffs and the NCAA filed dueling motions to exclude the testimony of their respective expert witnesses, Andrew Schwarz and Matthew Backus. Doc. 82 and 84. Named Plaintiffs offered certain opinions of Mr. Schwarz in support of their class certification motion, and the NCAA offered certain opinions of Dr. Backus in opposition to class certification. Doc. 68-1 and 69-1. Depositions of both experts were taken. Wedgworth Dec. ¶ 4.

On July 28, 2025, the Court entered is Memorandum Opinion and Order, granting Plaintiffs' Motion for Class Certification. Doc. 99. More specifically, the Court certified two classes pursuant to Fed. R. Civ. P. 23, including an Injunctive Relief Class defined as:

> All persons who, at any time between March 19, 2020, and the date of judgment in this action, (i) competed in NCAA Division I Tennis, or (ii) were ineligible to compete in NCAA Division I Tennis due to the Prize Money Rules;

and a Damages Class defined as:

> All persons who, at any time between March 19, 2020, and the date of judgment in this matter, have voluntarily forfeited Prize Money earned in a tennis tournament, and (i) have competed in NCAA Division I Tennis, or (ii) have submitted information to the NCAA Eligibility Center.

Doc. 99. The Court further appointed Plaintiffs Reese Brantmeier and Maya Joint as Class Representatives (also, the "Class Representatives") and counsel at both the Milberg PLLC and Miller Monroe Holton & Plyler PLLC firms as

lead counsel. In addition, the Court denied cross-motions to exclude the certain opinions of Mr. Shwarz and Dr. Backus. Doc. 99.

On August 18, 2025, the parties filed the Joint Submission on Proposal for Notice and Trial, setting out the proposed plan for distribution of class notice Doc. 101. On August 25, 2025, the Court amended the Damages Class to be defined as follows:

> All persons who, at any time between March 19, 2020, and the date of initial distribution of Class Notice in this matter, have voluntarily forfeited Prize Money earned in a tennis tournament, and (i) have competed in NCAA Division I Tennis, or (ii) have submitted information to the NCAA Eligibility Center.

Doc. 102.

Pursuant to the Court's Order Granting Joint Motion to Amend Schedule, the parties participated in a mediated settlement conference which occurred on October 10, 2025. Doc. 100 and 103. The mediation was held in Chapel Hill, North Carolina, and conducted by professional mediator Raymond E. Owens, Jr. of Higgins & Owens, PLLC. It was attended by counsel for both parties, Named Plaintiff Reese Brantmeier, and the Chief Legal Officer of the NCAA. Doc. 103, Wedgworth Dec. ¶ 8.

The settlement discussions at the mediation were structured and sequenced to compartmentalize the negotiations based on injunctive relief, damages, and certain additional terms. The parties were unable to reach an

agreement, and the mediation reached an impasse after the parties failed to progress past the first issue of injunctive relief. However, the parties agreed to continue discussions on settlement in the weeks following with the assistance of Mr. Owens. Wedgworth Dec. ¶ 9.

On October 27, 2025, the Court entered a Memorandum Opinion and Order approving the proposed plan for distribution of class notice and directing the execution of said plan, including notice through a class website, emails, postcard, targeted advertisements, and a press release. Doc. 105. On November 11, 2025, the Claims Administrator sent initial email notices to the Class. Schwarz Dec. ¶ 5.

Settlement discussions between the parties continued through the end of 2025 and into the spring of 2026. Such discussions occurred via regular email exchanges and phone calls with Mr. Owens, who continued to serve as an intermediary for the parties. Throughout the discussions, the parties continued to separate and compartmentalize the negotiations on injunctive relief, damages, and any remaining terms. Only upon reaching an agreement on injunctive relief did the parties turn to a discussion of damages, and only upon reaching an agreement on damages did the parties address the remaining terms, including attorneys' fees and cost reimbursements. Wedgworth Dec. ¶ 9.

On February 25, 2026, after several months of continued negotiations, the parties reached an agreement on the material terms of a settlement, outlined in an executed term sheet. Doc.109, Wedgworth Dec. ¶ 9. As a result, the parties filed a Joint Motion to Stay Proceedings immediately thereafter on February 25, 2026. The Court entered its Order Staying Proceedings for a period of 60 days and mandating any motion to approve settlement be filed no later than April 28, 2026. Doc. 110. The parties' agreement and proposed settlement is set forth in the Settlement Agreement (the "Settlement") included as Exhibit A to the Wedgworth Declaration. On April 28, 2026, Plaintiffs now move the Court for preliminary approval of the Settlement (the "Motion").

## B. PROPOSED SETTLEMENT

### 1. Injunctive Relief

The NCAA will revise its Prize Money Rules to eliminate any restrictions on student-athletes' acceptance of Prize Money prior to initial, full-time collegiate enrollment (the "Injunctive Relief"). While the Injunctive Relief Class and Damages Class are limited to tennis student-athletes, and the parties' settlement negotiations focused upon recovery for those Classes, the NCAA's rule change will benefit student-athletes competing in *all sports* – not just tennis. The elimination of such restrictions for pre-college enrollment

11

tennis student-athletes became effective as of February 25, 2026, when the initial term sheet was executed by the parties, and the NCAA's bylaws have been updated to codify the change for student-athletes in all sports. Upon this Court's final approval of the Settlement, the NCAA will be enjoined from re-instating the pre-college enrollment Prize Money Rules that existed prior to the Settlement.

### 2. Damages Relief

The NCAA has agreed to pay $2.02 million (the "Damages Sum") to the Class Plaintiffs ($20,000 of which will be paid to the Named Plaintiffs in service awards) and to separately pay an attorneys' fees award, reimburse the costs of pursuing this action, and to pay for certain settlement notice and administration costs. The NCAA will pay the Damages Sum into a court-approved, interest-bearing escrow account to be distributed following the notice and claim submission process. The amount available to the Damages Class after payment of the $10,000 service award to each Named Plaintiff is $2,000,000 (the "Settlement Fund"). The Damages Sum includes $2 million in recovery for the Damages Settlement Class[3] and $10,000 in service awards, subject to Court approval, for each of the Named Plaintiffs Reese Brantmeier

---

[3] As defined in the Settlement, the "Injunctive Relief Settlement Class" and "Damages Settlement Class"—collectively, the "Settlement Class"—are the same Classes previously certified by this Court on July 28, 2025.

12

and Maya Joint. Payment of the Damages Sum, which includes the Settlement Fund, will be made by the NCAA within 45 days of final approval of the Settlement.

**3.      Settlement Notice and Administration Costs**

As an additional benefit to Class Plaintiffs, Defendant will pay up to two-hundred and fifty thousand ($250,000.00) directly to the Claims Administrator for class notice and administration costs. These amounts will not be deducted from the Settlement Fund.  If the total cost of notice and administration is more than two-hundred and fifty thousand ($250,000.00), then these additional costs would be deducted from the Settlement Fund. However, the Claims Administrator has provided a flat fee billing arrangement of $50,000, plus $20 for each claim over 500.  Though there may be additional, unforeseen costs for work outside of the scope quoted by the Claims Administrator, Class Counsel does not anticipate that the total cost of settlement notice and administration costs will result in amounts being paid from the Settlement Fund.

**4.      Attorneys' Fees and Costs**

Plaintiffs will ask the Court to approve the attorneys' fees award and costs award set forth in the Settlement. The attorneys' fees and costs award was negotiated by the parties and addressed only after an agreement was

reached on the material terms related to the foregoing Damages Sum and Injunctive Relief. Wedgworth Dec. ¶ 9. As agreed, the NCAA will pay $425,000 to Class Counsel in reimbursement of costs advanced on behalf of Plaintiffs in pursuit of this matter, excluding settlement notice and administration costs, and $1.875 million in attorneys' fees. Ex. A, Wedgworth Dec. at 5. The attorneys' fees and costs were negotiated separately and will be paid separately from the Settlement Fund. Wedgworth Dec. ¶ 9. The parties are not seeking payment of any attorneys' fees or costs from the Damages Sum. *Id.*

### 5. Release of Claims

The Settlement will release the NCAA, all Division I Conferences, all Division I Member Institutions, and all of their respective past or present officers, directors, trustees, employees, insurers, agents, managers, partners, committee members, direct or indirect parents, subsidiaries, affiliates, and the predecessors, heirs, executors, administrators, successors, and assigns of any of the foregoing persons or entities (the "Released Defendant Parties") from damages claims that accrued before or during the Damages Class Period (March 19, 2020 and November 21, 2025), that were asserted or could have been asserted in this lawsuit (the "Release"). Ex. A, Wedgworth Dec. at 8-9. The Settlement will also release the Released Defendant Parties from injunctive claims that were or could have been raised in this lawsuit prior to

14

final approval by the Court. Ex. A, Wedgworth Dec. at 9.  This action will be dismissed with prejudice upon this Court's final approval of the Settlement and the exhaustion of any appeals. *Id.* at 18. Any damages claims that accrued after the date of the initial distribution of Class Notice (November 21, 2025) in this matter will not be released. *Id.* at 8-9.

### 6. Claims Administrator

The Settlement provides for Plaintiffs' retainment, subject to this Court's approval, of a Claims Administrator to provide all notices to Class Members and to administer the Settlement. Plaintiffs propose to engage RG/2 Claims Administration LLC ("RG/2") as Claims Administrator. Wedgworth Dec. ¶¶ 14-16. RG/2 would be engaged to handle the administration of the Settlement, including but not limited to the notice process, claims and opt-outs process, and settlement distribution. *Id.*

### 7. Notice Plan

Submitted with this Brief and in support of the Motion is the Declaration of William W. Wickersham, the Vice President of RG/2. A comprehensive notice plan (the "Notice Plan") is set forth therein, which includes individual direct notice to Class Members via email and/or postcard, targeted advertisements and notice via social and digital media, and a dedicated settlement website with relevant documents, information, and contacts. Wickersham Dec. ¶¶ 10-

15

21. The Notice Plan also includes an opt-out process for Settlement Class members that elect to be excluded from the Settlement. *Id*. ¶ 8.

### III.    STANDARD OF REVIEW

Class action claims may be settled, voluntarily dismissed, or compromised only with court approval. Fed. R. Civ. P. 23(e). Approval of a proposed class action settlement is a two-step process, involving preliminary and final approval. Fed. R. Civ. P. 23(e). At the preliminary approval stage, the Court must determine whether to give notice of the proposed settlement to the Class. Fed. R. Civ. P. 23(e)(1). To do so, the Court determines whether the proposed settlement is within the range of possible approval to justify providing notice. *Horton v. Merrill Lynch, Pierce, Fenner & Smith*, 855 F.Supp. 825, 827 (E.D.N.C. 1994). The parties must provide sufficient information to show the Court will be able to "(i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1). Here, the Court has already certified the Classes at issue, so the second factor of the analysis is not applicable. Doc. 99.

Under Rule 23(e)(2), the Court may approve a class action settlement only upon finding that it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). The same considerations identified in Rule 23(e)(2) that govern final approval also guide preliminary approval. *See* Fed. R. Civ. P. 23(e)(2) (Advisory

16

Committee's Note to 2018 Amendment stating, "The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate."). As enumerated therein, the Court may approve a proposed settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment;
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).

## IV.  <u>ARGUMENT</u>

**A.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE, AND SHOULD BE PRELIMINARILY APPROVED.**

### 1.  The Settlement Resulted from Arm's Length Negotiations.

17

The Court's consideration of a proposed settlement's fairness focuses on whether the settlement was negotiated at arm's length, without collusion. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991). The Court's analysis considers: (1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that has been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the relevant area of class action litigation. *Id.*

In the present case, such factors overwhelmingly support the fairness of the Settlement. The NCAA's counsel and Class Counsel have extensive experience in class action litigation, which is demonstrated in the litigation of this matter. Indeed, this Court has recognized that "Plaintiffs' Counsel have extensive experience in antitrust and class action litigation" and that "several among them have served as class counsel in other cases in federal courts." Doc. 99. The parties have litigated this case in earnest since its outset, including motions and hearings on preliminary injunctive relief, exclusion of prospective expert witnesses, and class certification. In addition, significant discovery has occurred in the case to date, including production of over 75,000 pages of documents, written discovery, and depositions of Plaintiffs, the parties' proposed expert witnesses, and a representative of the NCAA. Wedgworth Dec. ¶ 3-4.

18

The negotiations culminating in the Settlement began at the mediated settlement conference on October 10, 2025, with Raymond E. Owens, Jr. serving as the experienced neutral mediator for the parties. Wedgworth Dec. ¶ 8. The settlement negotiations between the parties, with the assistance of Mr. Owens, continued through February 25, 2026, when the parties reached an agreement on the material terms of a settlement, which were later reduced to the Settlement. Wedgworth Dec. ¶ 9. At all relevant times, the parties compartmentalized the negotiations on injunctive relief, damages, and remaining terms. Only upon reaching an agreement on injunctive relief did the parties turn to discussions of damages, and only upon reaching an agreement on damages did the parties address any remaining terms, including attorneys' fees and reimbursement of litigation costs. *Id.*

## 2. The Settlement Provides Significant Relief for the Classes.

To determine whether a proposed settlement is adequate, the Court examines the sufficiency of the relief provided to the class through: "(1) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement." *In re*

19

*Jiffy Lube Sec. Litig.*, 927 F.2d at 159; *see also 1988 Trust for Allen Children v. Banner Life Ins. Co.*, 28 F.4th 513, 527 (4th Cir. 2022) (holding that courts further examine the "amount of the settlement" to ensure its "commensurate with the scale of the litigation and the plaintiffs' chances of success at trial"). Here, as in the analysis of the Settlement's fairness, the above factors overwhelmingly support the adequacy of the Settlement.

While Plaintiffs believe their antitrust claims against the NCAA are compelling, Plaintiffs are not dismissive of the potential defenses the NCAA would likely present at a trial of this matter. Among other arguments, the NCAA has questioned the casual relationship, reliability, and/or measurement of past and prospective damages related to the Prize Money Rules, challenged the market definition at issue and Plaintiffs' claims of anticompetitive effects, and asserted various pro-competitive justifications for the Prize Money Rules. Doc. 84, 85, and 87. The NCAA has vigorously opposed Plaintiffs' claims throughout this litigation, including its opposition to Plaintiffs' Motion for Preliminary Injunction, Motion for Class Certification, and its Motion to Exclude Opinions of Andrew Schwarz. Doc. 33, 33.1-33.3, 46, 69, 69.1-69.5, 84, 85, and 87.

In addition, there remains substantial litigation to occur prior to the trial of this matter set for November 2, 2026, including additional expert discovery,

20

merits reports of the parties' experts with corresponding responses and rebuttals, as well as dispositive and *Daubert* motions and briefing. Finally, proposed federal legislation could further impact the viability of Plaintiffs' claims.[4] Wedgworth Dec. ¶ 13. The relief provided by the Settlement weighs against the expense, resources, and risk of continued litigation and trial, including the potential delay of appeals following any judgment. Wedgworth Dec. ¶ 12.

In examining the relief, the Damages Sum provided in the Settlement is excellent in light of the estimated damages and risks that those estimated damages would be reduced or eliminated. Mr. Schwarz's estimate of the *upper-bound* of damages owed to the Damages Class, or amounts forfeited by Damages Class Members by operation of the Prize Money Rules, totals $2,860,884. Schwarz Dec. ¶ 5. Compared to this estimate, the Damages Sum provides recovery of 70% of estimated damages for the Class. Schwarz Dec. ¶ 5. This recovery is reasonable, especially in light of the risk of forthcoming summary judgment and *Daubert* motion challenges, as well as trial and potential appeal. *See Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) (class settlement may be fair even when it "only amount[s] to a fraction of the

---

[4] SCORE Act, H.R. 4312, 119th Cong. (2025), https://www.congress.gov/bill/119th-congress/house-bill/4312/text.

potential recovery"); *see also Seaman v. Duke Univ.*, No. 1:15-CV-462, 2019 WL 4674758, at \*4 (M.D.N.C. Sept. 25, 2019) (court approved proposed settlement for 17-44% of estimated damages while acknowledging the potential for damages estimates to be reduced through further briefing and argument).

The NCAA argued that Mr. Schwarz improperly attributed pre-enrollment damages to 28 athletes who earned less than $10,000 in each pre-enrollment year and therefore could have retained all of their prize money without affecting eligibility. Doc. 71-1 at 31. If the Court agreed with this position, Mr. Schwarz's damages estimate would be reduced by $141,190, dropping the pre-enrollment damages pool from 60 student-athletes to 32, with total pre-enrollment harm falling to $841,311. *Id.*

The NCAA also argued that Mr. Schwarz overestimated pre-enrollment harm for student-athletes who earned more than $10,000 in a given year but reported retaining less than $10,000, contending that the unreported gap below $10,000 reflected incomplete self-reporting rather than a Prize Money Rule-compelled forfeiture. Doc. 71-1 at 32. If the Court agreed with the NCAA on both this argument and the preceding one, total pre-enrollment harm would have fallen to $699,282. *Id.*

The NCAA further argued that two of the largest individual claimants, who together account for approximately 22% of the pre-enrollment Damages

22

Class's pecuniary harm, were never certified as eligible by the NCAA Eligibility Center and that the evidence suggests they were not enrolled at or committed to an NCAA Division I institution, such that the Prize Money Rules would not have forced them to either forfeit their Prize Money or jeopardize their eligibility. Doc. 71-1 at 32-34. Had the Court agreed with the NCAA on all three arguments, total pre-enrollment pecuniary harm would have been reduced to $315,202. *Id*.

The NCAA also argued that Mr. Schwarz's post-enrollment damages methodology was independently unreliable. Doc. 85 at 2. Specifically, the NCAA contended that his use of pre-enrollment Prize Money data as a proxy for post-enrollment expenses had no empirical foundation and could produce large biases in either direction for any given student-athlete. Doc. 71-1 at 36-37 and Doc. 85 at 7. Had the Court agreed with this position, and found that post-enrollment expenses were overstated, post-enrollment damages would have been subject to reduction, and the Damages Sum would represent a higher percentage of any corrected damages figure. *Id*.

Even if none of the NCAA's challenges succeeded initially, Plaintiffs still face meaningful risks at trial. The jury could find for the NCAA outright, returning no liability and no recovery for the Classes whatsoever. Even on a liability verdict, the jury could return a damages award far lower than that

23

estimated by Mr. Schwarz. *See United States Football League v. National Football League*, 644 F. Supp. 1040 (S.D.N.Y. 1986) (jury found defendants liable for monopolizing professional football but awarded plaintiffs only $1 in nominal damages, trebled to $3).

In short, there were palpable risks associated with continued litigation and the uncertainty of how a jury would interpret the evidence. These risks weigh in favor of the Settlement. Class Counsel, based on its familiarity with the record and the combined experience of the attorneys in leadership positions, weighed these risks and concluded that a guarantee of $2,020,000 and injunctive relief better serves the Classes' interests than proceeding through the unknowns of forthcoming motion practice, trial, and potential appeals. Wedgworth Dec. ¶ 12; *see Flinn*, 528 F.2d at 1173 ("The fact that all discovery has been completed and the cause is ready for trial is important, since it ordinarily assures sufficient development of the facts to permit a reasonable judgment on the possible merits of the case."); *see Cox v. Branch Banking & Trust Co.,* No. 5:17-cv-1982 2019 WL 164814, at *2 (S.D. W.Va. Jan. 10, 2019) (recognizing that class counsel "who are both experienced in prosecuting and defending complex class action claims" and with a "clear view of the strengths and weaknesses of their cases" are "in a strong position to make an informed decision regarding the reasonableness of a potential

24

settlement") (citation and quotation omitted); *see Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-cv-423, 2008 WL 5377783, at \*4 (S.D. W. Va. Dec. 19, 2008) (noting that when the parties' attorneys are experienced and knowledgeable about the facts and claims, their "representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight") (citation and quotation omitted).

In addition, the distribution of the Damages Sum is equitable under the circumstances. As part of the claims administration, Damages Class Members will submit their respective claims and supporting information. The Damages Sum will then be distributed to each Damages Class Member on a pro-rata basis based on his or her individual damages or total Prize Money he or she forfeited. Wedgworth Dec, Ex. C.

Crucially, the Settlement consideration is not limited to the Damages Sum but also includes the Injunctive Relief. The NCAA has agreed to revise the Prize Money Rules to eliminate any restrictions on student-athletes' acceptance of Prize Money prior to initial, full-time collegiate enrollment. Such revision to the Prize Money Rules will apply to student-athletes competing in *all sports*, not just tennis. Further, the NCAA will be enjoined from re-instating the foregoing Prize Money Rules that existed prior to the Settlement. Wedgworth Dec., Ex. A at 11.

25

The Injunctive Relief represents an extraordinary outcome for the Injunctive Relief Class and future generations of pre-enrollment student-athletes. The impact of eliminating the pre-enrollment Prize Money Rules is substantial. As a result of the Injunctive Relief, student-athletes will no longer have to account for and/or forfeit such Prize Money rightfully earned through their performance in non-NCAA competitions prior to full-time collegiate enrollment. Mr. Schwarz estimates the present value of the future stream of all pre-enrollment prize money that can now be retained by athletes to be approximately $14.8 million. Schwarz Dec. at ¶ 7. Notably, such Injunctive Relief will be effective for pre-enrollment student-athletes competing in the upcoming Roland Garros (May 24-June7), Wimbledon Championships (June 29-July 12), and US Open Tennis Championships (August 24-September 5), among other non-NCAA competitions.

3. **The Class Representatives Have Vigorously Represented the Classes and the Service Awards to be Requested Are Reasonable.**

Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Berry v. Schulman*, 807 F.3d 600, 613 (4th Cir. 2015) (citation omitted). Such awards are typical in class

26

action cases. *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). Per the Settlement, Plaintiffs will ask the Court for approval of $10,000 service awards for each of the Named Plaintiffs, Reese Brantmeier and Maya Joint.

At their own personal reputational risk, the Class Representatives stepped forward to assert this action on behalf of the Classes and have vigorously represented the Classes at all times. The Class Representatives did so even while maintaining their rigorous personal schedules. Wedgworth Dec. ¶ 17. Class Representative Brantmeier remained enrolled and competed for the University of North Carolina at Chapel Hill women's tennis team, and Class Representative Joint competed for the University of Texas at Austin before turning professional.

As detailed above, the Class Representatives have been actively involved in this litigation, including reviewing relevant documents and filings, communicating and meeting with Class Counsel, attending the mediation, and sitting for a seven-hour deposition. Wedgworth Dec. ¶ 17. Indeed, as this Court has recognized, "Ms. Brantmeier and Ms. Joint have been active participants in this litigation. Each has assisted counsel in the litigation, provided declarations, and participated in depositions." Doc. 99.

27

Their commitment to this case was particularly challenging given the public nature of this case and the notoriety of each of these athletes. *Id.* at 25. Reese Brantmeier won the 2025 NCAA Division I Women's Singles National Title – with this lawsuit pending - and Maya Joint is currently ranked #29 in the world. Ms. Joint now lives in Australia and travels all over the world playing tennis. *Id.* She has often joined calls while training and/or from the other side of the world. *Id.* Each of these women have been regularly questioned by the media before, during, and after marquee tennis tournaments. *Id.* They have had to endure public scrutiny and repeatedly justify their purpose in pursuing this litigation. *Id.* The impact of this litigation has been significant on each of these athletes and their service to this Class has been noteworthy. *Id.*

The Class Representatives' efforts and sacrifice have culminated in the Settlement and relief provided for the Classes. Thus, the service awards to be sought are exceedingly reasonable and appropriate under the circumstances.

4. **Class Counsel Have Vigorously Represented the Classes and the Attorneys' Fees and Costs to be Requested Are Reasonable.**

Class Plaintiffs and their counsel will ask the Court at a future date to approve the attorneys' fees award and costs award negotiated by the parties and permitted under the Settlement Agreement. *See* Fed. R. Civ. P. 23(h) ("the

28

Court may award reasonable attorneys' fees … authorized … by the parties' agreement."). Class Counsel have adequately represented the Classes throughout this litigation. Since filing this case, Class Counsel vigorously litigated every contested motion, including motions related to preliminary injunctive relief, class certification, and the exclusion of expert witnesses. Several of these motions involved complex and novel questions of law at the intersection of antitrust and NCAA eligibility rules. Class Counsel also conducted extensive fact and expert discovery, including the production of more than 75,000 pages of documents, and depositions of the parties' expert witnesses and the NCAA's representative. Wedgworth Dec. ¶ 3-4.

In the two years that Class Counsel have litigated this case, Class Counsel have provided resources to prosecute the Classes' claims with no guarantee of compensation. Wedgworth Dec. ¶ 5-7. Those resources include extensive attorney time and out-of-pocket costs (primarily to develop expert analysis). *Id.*

In a certified class action, the Court may award reasonable attorneys' fees and nontaxable costs authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). The most critical factor in calculating a reasonable fee award is the degree of success obtained. *E.g., McDonnell v. Miller Oil Co.*, 134 F.3d

638, 641 (4th Cir. 1998). There is no reason to think that Class Counsel left money on the table in negotiating this Settlement. *See Berry*, 807 F.3d at 618.

**5.      The Proposed Claims Administrator Is Qualified and Its Estimated Fees Are Reasonable.**

The Settlement provides for Class Plaintiffs' retention, subject to this Court's approval, of a Claims Administrator to provide all notices to Class Members and to administer the Settlement. Class Plaintiffs request the Court approve and appoint RG/2 Claims Administration LLC as Claims Administrator. RG/2's team of attorneys and financial professionals have decades of experience handling administration of complex claims and settlements. Doc. 101-1 at ¶ 4. RG/2 would be engaged to handle the administration of the Settlement, including but not limited to the notice process, claims and opt-outs processing, review and intake of all potential claims, determination of valid claims, and settlement distribution. RG/2's estimate of costs for its service as Claims Administrator is reasonable, both in light of the amount of work to be performed and the amount of the Damages Sum provided for in the Settlement. Wedgworth Dec. ¶ 14-16.

**6.      The Proposed Notice Plan Is Appropriate and Affords Adequate Opportunity for Objections and Opt-Outs.**

The proposed Notice Plan is set forth in the Declaration of William W. Wickersham. Wickersham Dec. ¶¶ 10-21. The Notice Plan is designed to

provide notice of the Settlement to members of both the Injunctive Relief and the Damages Class. *Id.* As required, the notice clearly describes the nature of the action and Settlement, the definition of the Classes, the legal issues, the right to request exclusion from the Settlement, the right to appear with an attorney, and the binding effect of a judgment. The notice also apprises Settlement Class members of the final fairness hearing, the calculation of each Settlement Class member's recovery, and information about proposed attorneys' fees, costs, and services awards to be requested. The proposed Notice Plan is "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).

The Notice Plan includes information on each Settlement Class member's right to opt-out of the Settlement and instructions on how to do so. Similarly, the Notice Plan includes a proposed objection process, wherein Settlement Class members are afforded the opportunity to submit comments and/or objections to the Settlement, any application for attorneys' fees and costs, any application for service awards, and the issuing of final approval of the Settlement Agreement and distribution of the Settlement Fund pursuant to the Allocation Plan approved by this Court. In addition, the proposed Allocation Plan sets forth a proposed formula for a pro rata distribution to all

31

approved and validated claimants of the Settlement Fund. Wedgworth Dec, Ex. C.

Similar to the class notice, the settlement notice will be distributed to potential class members using data from the NCAA's Eligibility Center database, which contains prospective student-athletes' email and mailing addresses and was produced in discovery. *Id.* at 4. Because NCAA certification is required for competition, this database captures all Damages Class members and those within the first prong of the Injunctive Relief Class, as well as individuals deemed ineligible or who considered but declined college participation in favor of professional play. *Id.* In addition, the Claims Administrator will conduct targeted digital advertising, issue a press release, and maintain a website with further information. *Id.* at ¶¶ 17-18.

### 7.    The Court Should Set a Final Fairness Hearing.

Finally, the Court should set a final fairness hearing to facilitate the final step in the class action settlement process under Rule 23(e)(2). The parties propose the following schedule for the final approval process and hearing:

| Event | Proposed Deadline |
|---|---|
| Order Granting Preliminary Approval of Class Action Settlement | In the Court's Discretion |
| Notice Campaign and Claims Period Begins ("Notice Date") | Within 30 days of Order Granting Preliminary Approval |
| Objection, Opt-Out and Claims to be Filed Deadline | 90 days from Order Granting Preliminary Approval |
| Plaintiffs' Motion for Final Approval of Class Action Settlement | 150 days from Order Granting Final Approval |
| Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards | 165 days from Order Granting Final Approval |
| Final Fairness Hearing | To Be Determined by the Court |

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request the Court enter an Order: (1) preliminarily approving the proposed settlement with Defendant National Collegiate Athletic Association, (2) appointing RG/2 Claims Administration LLC as the Claims Administrator, (3) approving the proposed notice plan and deadlines for settlement notice, objections, opt-outs and claims to be filed, (4) approving the proposed Allocation Plan, and (5) scheduling a final fairness hearing on the proposed settlement and proposed distribution.

This the 28th day of April 2026.

/s/ *Peggy J. Wedgworth*
**MILBERG, PLLC**
PEGGY J. WEDGWORTH
New York State Bar No. 2126159
405 East 50th Street
New York, NY 10022
(212) 594-5300
pwedgworth@milberg.com

**BRYSON HARRIS SUCIU
& DEMAY, PLLC**
DANIEL K. BRYSON
North Carolina State Bar No. 15781
LUCY N. INMAN
North Carolina State Bar No. 17462
900 W. Morgan Street
Raleigh, NC  27603
(919) 600-5000
dbryson@milberg.com
linman@milberg.com

**MILLER MONROE HOLTON
& PLYLER PLLC**
JASON A. MILLER
North Carolina State Bar No. 39923
ROBERT B. RADER III
North Carolina State Bar No. 55184
JOEL LULLA, *Of Counsel*
New York State Bar No. 1865823
1520 Glenwood Avenue
Raleigh, NC  27608
(919) 809-7346
jmiller@millermonroe.com
rrader@millermonroe.com
joel_lulla@yahoo.com

*Counsel for Plaintiffs and Classes*

34

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that this Brief in Support of Motion for Preliminary Approval of Class Action Settlement contains fewer than 6,182 words consistent with Local Rule 7.3(d)(1). This certification relied on the word count feature of Microsoft Word.

This the 28th day of April 2026.

/s/ *Peggy Wedgworth*
PEGGY WEDGWORTH

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 28, 2026, the foregoing Brief in Support of Motion for Preliminary Approval of Class Action Settlement was filed electronically with the United States District Court for the Middle District of North Carolina using the CM/ECF system, which will serve and send notification of such filing to all parties or their counsel of record.

This the 28th day of April 2026.

/s/ *Peggy J. Wedgworth*
PEGGY J. WEDGWORTH

36